IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Civil Action No.:

| | |
|---|---|
| CHRISTOPHER T. MANGUM, individually, and d/b/a WRIGHTSVILLE BEACH JET SKI RENTALS; WRIGHTSVILLE BEACH JET SKI RENTALS, INC.; M. CARSON SEITER, individually and d/b/a CAROLINA COAST WATERSPORTS; CAROLINA COAST WATERSPORTS, LLC, <br><br>　　　　　　　　　　Plaintiffs, <br><br> v. <br><br> TOWN OF WRIGHTSVILLE BEACH, a North Carolina Corporation and Body Politic; TIMOTHY OWENS, individually and in his official capacity as Wrightsville Beach Town Manager; and JOHN WESSELL, individually and in his official capacity as Wrightsville Beach Town Attorney, <br><br>　　　　　　　　　　Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTION & DAMAGES** <br><br> (Jury Trial Demanded) |

**NOW COME** the Plaintiffs, CHRISTOPHER T. MANGUM, individually, and d/b/a WRIGHTSVILLE BEACH JET SKI RENTALS; WRIGHTSVILLE BEACH JET SKI RENTALS, INC.; M. CARSON SEITER, individually and d/b/a CAROLINA COAST WATERSPORTS; and CAROLINA COAST WATERSPORTS, LLC, by and through the undersigned counsel, and on behalf of those similarly situated, complaining of Defendants, allege and say:

**NATURE OF THE ACTION**

1.　　"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This action challenges the constitutional authority of the Town of Wrightsville Beach to demand a **$500.00** non-refundable "appeal fee" from persons requesting appeals of adverse zoning decisions; the Town's authority to enforce zoning ordinances at the N.C. Wildlife Public Boating Access Area, the adjacent N.C.D.O.T. drawbridge right-of-way, and the public

BUSCEMI LAW, PLLC
530 Causeway Dr., Ste. F-1 | Wrightsville Beach, NC 28480

trust waters of the adjoining Intracoastal Waterway; and further challenges the lawfulness and constitutionality of the Defendants' enforcement of Town ordinances against Plaintiffs for alleged zoning violations arising out of the use and enjoyment of those public lands and waters by Plaintiffs and customers of their jet ski rental businesses.

2.    Plaintiffs seek judgments from this Court declaring: (1) that the Town's adoption and enforcement of an ordinance establishing a **$500.00** (five hundred-dollar) non-refundable zoning "appeal fee" violates Plaintiffs' federal constitutional rights to due process; (2) that the adoption and enforcement of the zoning "appeal fee" is beyond the scope of the Town's statutory authority; (3) that the Town exceeds the scope of its statutory authority by enforcing zoning ordinances on exempt state-owned lands located at the N.C. Wildlife Commission Public Boating Access Area and D.O.T. drawbridge right-of-way; and, (4) that any citations, penalties, judgments, orders, or other relief issued or obtained by Defendants against Plaintiffs and those similarly situated which failed to provide adequate due process, or which were the result of Defendants' unlawful zoning enforcement, are invalid, unenforceable, null, and VOID.

3.    Plaintiffs seek preliminary and permanent injunctive relief from the Court in Orders:

    a.  Enjoining Defendants from further unlawful enforcement of the UDO;

    b.  Declaring void, setting aside, and enjoining from enforcement any citations, penalties, assessments, judgments, orders, and any other punitive remedies assessed against Plaintiffs and those similarly situated which failed to provide adequate due process or which were obtained in the course of Defendants' unlawful UDO enforcement;

    c.  For similar, additional, and other reasons, declaring void, setting aside, and enjoining enforcement of a Consent Judgment entered against MANGUM and WRIGHTSVILLE BEACH JET SKI RENTALS, INC. in New Hanover County Superior Court on or around April 25, 2018;

    d.   For similar, additional, and other reasons, declaring void, setting aside, and enjoining enforcement of an Order of Contempt entered on September 10, 2018 against MANGUM and WRIGHTSVILLE BEACH JET SKI RENTALS, INC. for alleged violations of the Consent Judgment; and,

    e.   Ordering an accounting and refund of unlawfully collected fees plus interest.

4.    Plaintiffs additionally seek judgments against Defendants awarding actual, compensatory, and nominal damages, plus costs and reasonable attorney's fees, as well as punitive damages against Defendants OWENS and WESSELL in their individual capacities, for the repeated violations of Plaintiffs' clearly established constitutional and statutory rights, abuse of process, and conspiracy to commit the same. Plaintiffs also seek state-law claims against Defendant OWENS in his individual capacity for defamation and unfair and deceptive trade practices.

5.    The above-referenced zoning ordinances were codified in the Wrightsville Beach Code of Ordinances, Chapter 15, officially titled the Unified Development Ordinance[1] of Wrightsville Beach, NC (herein the "UDO" or "Zoning Ordinances"), which enacted zoning laws, land & building regulations, and subdivision provisions under the authority of N.C.G.S. §§ 160A-363, 381, 382, and 372. *See* UDO § 155.1.2 – *Authority*[2]. The scope of powers and authority granted by the enabling statute are subject to express limitations identified in the plain language of UDO subsections §§ 155.1.4.1-2, entitled *Jurisdiction* and *Exemptions*. *See* UDO § 155.1.4 – *Applicability*[3].

6.    The ordinance providing for a zoning decision "appeal fee" was codified in subsection (B) of UDO § 155.2.9, entitled *Fees*[4] (herein the "Fee Ordinance" or "Fee Provision"). The Fee Ordinance does not provide for specific amounts to be assessed for certain departmental services, but rather gives Town officials discretion to determine fees and costs that are "reasonable." The Town,

---

[1] A true and accurate copy of the relevant provisions of the UDO, WB Code of Ordinances Chapter 155, is attached hereto as **Exhibit 1** and fully incorporated by reference.
[2] *See* **Exhibit 1** at 3.
[3] *See* **Exhibit 1** at 4-5.
[4] *See* **Exhibit 1** at 9.

exercising that discretion, established a **$500.00** non-refundable zoning appeal fee[5], applied without exception and regardless of the amount of any penalty or fine imposed in the underlying violation.

7.      The plain and unambiguous language of UDO § 155.1.4.2(B) states, "[I]n accordance With NC General Statutes 160A-392, the Town of Wrightsville Beach UDO applies to state-owned lands **only when a building is involved** [emphasis added]." The term "Building" [6] is expressly defined in Exhibit A to the UDO as "[a]ny structure enclosed and isolated by exterior walls constructed or used for residence, business, industry, or other public or private purpose, or accessory thereto."

8.      The lands at issue are the N.C. Wildlife Commission Public Boating Access Area and the adjacent D.O.T. drawbridge right-of-way. No building has ever been constructed on these lands. The parties dispute the Town's jurisdictional authority to enforce the UDO on these lands and, therefore, a determination by this Court is necessary to resolve this ongoing controversy.

## JURISDICTION AND VENUE

9.      This is an action for declaratory relief, injunctive relief and damages pursuant to 42 U.S.C. § 1983 based upon the continuing violations of Plaintiffs' rights under the Constitution of the United States, the North Carolina Constitution, and other violations of state and federal law.

10.      Jurisdiction exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. Jurisdiction also exists pursuant to 28 U.S.C. §§ 1331 and 1343 based on 42 U.S.C. § 1983 and questions of federal constitutional law. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11.      Because this action challenges the constitutionality of local ordinances and policies, administrative remedies are inadequate, as the administrative board has no jurisdiction to grant the relief sought and therefore a futile administrative appeal is not required. Indeed, the Defendants' enforcement of the policies and procedures challenged herein have effectively thwarted Plaintiffs' prior attempts to obtain prior administrative relief, thus prompting the necessity of this action.

---

[5] A true and accurate copy of the Planning & Inspection Department Fee Schedule is attached hereto as **Exhibit 2** and fully incorporated by reference.
[6] *See* **Exhibit 1** at 19.

12.     Venue is proper in the Eastern District in that the events and conduct complained of herein occurred in the Eastern District.

## PARTIES

13.     Plaintiff CHRISTOPHER T. MANGUM (herein "MANGUM") is a citizen and resident of New Hanover County, North Carolina; MANGUM is the owner and sole shareholder of Wrightsville Beach Jet Ski Rentals, Inc.

14.     Plaintiff WRIGHTSVILLE BEACH JET SKI RENTALS, INC. f/k/a WRIGHTSVILLE BEACH JET SKI RENTALS, LLC (herein "WB-JSR") is a Corporation organized and existing under the laws of North Carolina, having its principal place of business in New Hanover County.

15.     Plaintiff M. CARSON SEITTER (herein "SEITTER") is a citizen and resident of New Hanover County, North Carolina; SEITTER is the sole owner and managing member of Carolina Coast Watersports, LLC.

16.     Plaintiff CAROLINA COAST WATERSPORTS, LLC (herein "CCW") is a Limited Liability Company organized and existing under the laws of North Carolina, having its principal place of business in New Hanover County.

17.     Defendant TOWN OF WRIGHTSVILLE BEACH (herein the "Town," or "WB") is a body politic and corporate, organized and existing under the laws of the State of North Carolina, capable of suing and being sued, and having, upon information and belief, no immunity to Plaintiff's claims, and otherwise having waived any immunity to Plaintiffs claims.

18.     Upon information and belief, Defendant TIMOTHY OWENS (herein "OWENS" or "Town Manager") is a citizen and resident of New Hanover County, and at all times relevant acted under the color of state law and as a final policy maker for the Town in his position as Town Manager of Wrightsville Beach, and, upon information and belief, having no immunity to the claims alleged herein, and otherwise having waived any immunity to those claims, he is hereby sued individually and in his official capacity for purposes of prospective injunctive relief.

19.     Upon information and belief, Defendant JOHN WESSELL (herein "WESSELL" or "Town Attorney") is a citizen and resident of New Hanover County, and at all times relevant acted

under the color of state law and as a final policy maker for the Defendant in his position as Town Attorney of Wrightsville Beach, and, upon information and belief, having no immunity to the claims alleged herein, and otherwise having waived any immunity to those claims, he is hereby sued individually and in his official capacity for purposes of prospective injunctive relief.

20.     Plaintiffs reserve the right to join additional parties as defendants.

21.     Plaintiffs have suffered, and will continue to suffer, material and irreparable injury by reason of the unconstitutional and unauthorized **$500.00** non-refundable "appeal fee.," the unlawful enforcement of the UDO, and by reason of the failure of the Town, its municipal governing body, and its agents, to comply with the Constitution of the United States and the North Carolina Constitution, as the same apply to the Plaintiffs and those similarly situated, the procedures set forth in the North Carolina General Statutes, Chapter 160A, Article 19, Parts 1-5, and other applicable provisions of state law more specifically identified below.

22.     Pursuant to 28 U.S.C. § 2201 there exists a justiciable controversy between Plaintiffs and Defendants arising from the enactment and enforcement of a zoning "appeal fee" ordinance, as well as the enforcement of the UDO beyond the Town's jurisdiction, in that:

   a. Defendants have repeatedly assessed Plaintiffs **$50.00** (fifty-dollar) civil citations for alleged zoning violations on state-owned land that is, by all indications, exempt from the UDO;

   b. Defendants violated the due process rights of Plaintiffs and others similarly situated by failing to provide proper notice and an opportunity to be heard on zoning appeals and by demanding a **$500.00** non-refundable "appeal fee";

   c. Defendants refused to transmit each of Plaintiffs' timely appeals to the Board of Adjustment[7] (herein the "Board" or "BOA") for a hearing on the merits of the enforcement actions, and failed to stay enforcement of the zoning decisions upon notice of Plaintiffs' appeals as required by law;

---

[7] The Board of Alderman acts as the Board of Adjustment in zoning appeals.

d.  Defendants failed to comply with the Debt-Setoff Act's hearing requirements;

e.  Defendants violated Plaintiff MANGUM's 1st Amendment right to free speech by filing a lawsuit seeking debt-collection and injunctive relief against MANGUM and his business shortly after he privately notified multiple Town representatives of concerns that an improper relationship between certain Town officials may have created a conflict of interest affecting his ability to secure any hearings on his numerous appeals;

f.  Defendants wrongfully secured an overly-restrictive Consent Judgment enjoining MANGUM and WB-JSR from further business operations anywhere within the Town's corporate or extraterritorial jurisdiction;

g.  On July 26, 2018, upon receipt of SEITTER's appeal of civil citations issued against him (to which the Town failed to timely respond), Defendants filed a motion to hold MANGUM and WS-JSR in civil contempt of court, yet sought and secured relief only available under the Superior Court's criminal contempt powers, resulting in an Order of Contempt[8] containing purge conditions requiring the payment of punitive damages and fees, which, upon noncompliance, subjects MANGUM to incarceration, despite the absence of adequate findings of fact regarding his ability to pay, and as such places MANGUM at risk of being wrongfully deprived of his personal liberty without due process of law; and,

h.  SEITTER, despite giving timely notice of appeal of citations issued against him in June 2018, remains deprived of his due process rights as he has been denied a hearing before the Board for a determination on the merits of the zoning decision due to the Town's demand of an unconstitutional and unlawful **$500.00** non-refundable "appeal fee."

---

[8] The Order for Contempt is currently pending appeal from New Hanover County Superior Court.  A true and accurate copy is attached as **Exhibit 11** and fully incorporated by reference below.

**FACTUAL ALLEGATIONS**

### I.    Background and History

23.    The use and enjoyment of the Atlantic Intracoastal Waterway ("AIWW", "Intracoastal" or "waterway") by customers of watercraft rental businesses has been a topic of debate during Wrightsville Beach Board of Aldermen meetings for over a decade.  Over the past two decades, there has been a variety of businesses that have offered recreational rentals of jet-skis, kayaks, paddleboards, and fishing boats for their customers' use and enjoyment in the Intracoastal waters. These businesses have utilized the boat ramp at the N.C. Wildlife Commission's Public Boating Access Area to launch rented watercraft into the Intracoastal waters; Plaintiffs' customers would enter the water by or through the D.O.T. drawbridge right-of-way to take control of the jet skis and navigate the public waterways at their own risk.

24.    After numerous discussions with Town officials over the years, the rental operators understood that they were in compliance with all state and local laws so long as no money was collected in the Town limits and so long as they and their customers otherwise acted in accordance with the state Boating and Water Safety laws[9].  Indeed, there were not, and are not, any applicable laws or ordinances prohibiting or restricting the otherwise lawful use of the public boating access area or the coastal waterways by Plaintiffs, their customers, or any other private citizens.

25.    MANGUM has been operating a commercial jet ski rental business for over seventeen years, many of those years alongside other jet ski rental businesses, all of which utilized the boat ramp at the state-owned public boating access area on Wrightsville Beach as a location to launch rented jet skis into the public waterway.  MANGUM collected money from customers in Wilmington before crossing over the D.O.T. S.R.-74 drawbridge to meet renters at the Public Boating Access Area, which provided a safe location to enter the water and take control of the rented jet-skis.

26.    Currently, there are a number of commercial business operations offering recreational watersport rentals and activities which utilize the boat ramp at the N.C. Wildlife Public Boating

---

[9] *See* N.C.G.S. § 75A, *et al.*

Access Area, including CCW, Genesis Motorsports, LLC, Wrightsville Kayak Company, Feel Good Fishing Charters & Adventures, and Epic Excursions, which informs customers on its website that "We pick up at the Wrightsville Beach Public Boat Ramp."[10]

27.     Defendants are aware of most, if not all, of these operations and their use of the public boating access area for purposes of providing a safe location for customers to access and enjoy the recreational equipment and activities.  Yet, Plaintiffs, and to a lesser degree another jet ski rental operator, are the only businesses that have been subjected to Defendants' UDO enforcement.

28.     Public comments about jet ski rentals in the intracoastal waterway became ubiquitous during Town meetings in recent years, despite the Defendants' repeated acknowledgment that the Town does not have jurisdiction to prohibit such activities.

29.     The minutes from the June 14, 2007 Board of Aldermen meeting include references to public comments made by resident Colin Eagles in which he asked the Board to consider amending the Zoning Code to prohibit the renting of jet skis at Wrightsville Beach:

> [Mr. Eagles] said the Board has an opportunity to refer this to the Planning Board to find a way to put it in the Code. Mr. Eagles stated that he thought it was time to make a proactive definitive decision that [renting jet skis] is not going to be allowed at Wrightsville Beach.

The minutes go on to note a specific discussion regarding the "Jet Ski Rental Situation" during a report presented by former Town Manager Robert F. Simpson:

> [Mr. Simpson] We reached a kind of gentleman's agreement last year for them to take money across the bridge and not on wildlife property. Yesterday, there were lawn chairs spread out and they were taking money out in the street. We ran a sting on them last week and they took money on Town property. We gave them the opportunity to adhere to this or we will seek an injunction through the Court to prevent them from doing business in Wrightsville Beach. It will cost them $50 per day.
>
> Mr. Wilson stated that he told them today that they had to do business across the bridge.
>
> Alderman Cignotti asked where they would be doing business across the bridge and Mr. Simpson said it would be in the old Babies Hospital parking lot.

---

[10] *See* https://epicexcursionsnc.com/about/.

Alderman Cignotti stated that it was not fair to any waterfront business when these guys are out there scot-free doing business. Alderman Whalen asked if Chief Carey could ask if they are legal in the Babies Hospital parking lot and Chief Carey said it may go to zoning but he would check. Alderman Whalen said, "Just alert them to the fact of what we are doing." Chief Carey said he would do that.

Mr. Simpson said there is a State Statute that prevents them from operating in certain areas. Chief Carey stated that we could prosecute but we were using it now as a hammer over their heads.

30.     The Town did not adopt an amendment to the ordinances prohibiting the renting or use of jet skis at Wrightsville Beach or in the coastal waterways, presumably because the Town was fully aware that it did not have the authority to do so.

31.     Tellingly, the minutes from the June, 12, 2008 Board of Aldermen meeting include references to public comments again made by resident Colin Eagles in which he admonished the Town for not taking action to ban jet ski rental businesses, apparently after having a private discussion on the matter with WESSELL, the Town Attorney.  The minutes specifically provide:

[Mr. Eagles] said we have a minimum of two jet ski operators at Wrightsville Beach and he was not suggesting that we ban jet skis, but he was suggesting that we ban a lot of businesses. Mr. Eagles expressed concern with allowing businesses to put folks on "dangerous speed vehicles" in the water. **He stated that it was Mr. Wessell's opinion that if jet ski businesses are licensed in Wilmington that they have the right to operate on public property**. He said the Board could ask Mr. Wessell to come up with language to prohibit any aspect of jet ski rentals at Wrightsville Beach – all zoning areas should be closed to jet skis. Mr. Eagles noted that if we take five or six jet skis off the water, we would have greatly enhanced safety at Wrightsville Beach. He stated that it should have no impact on residents of Wrightsville Beach because no resident runs them and he did not think residents use them. He said this could be done within two to three weeks with a zoning amendment or whatever way. He stated that safety demands it and to do anything less would be shirking the Town's responsibility. [emphasis added]

32.     WESSELL's opinion that businesses licensed in Wilmington have the right to operate on public property is a true and accurate statement of the law, both then and now.

33.     The minutes from the September 25, 2008 Board of Aldermen meeting note discussions regarding a report by the Water Safety Committee in which former Alderwoman Lisa Weeks proposed

potential items to be addressed by the committee, including *Jet Skis in the marsh and protected area* [original emphasis].  The minutes further provide:

> Alderman Weeks stated that this was an advisory committee – no different from the others. She said education was a huge component to it.
>
> Alderman Cignotti referenced jet skis as an example and said he agreed with Colin Eagles that we should not encourage that. He expressed the need for education for people parking and renting jet skis in the marsh.
>
> **Mayor Whalen referenced personal watercraft laws that had been passed and since removed. He said New Hanover County had a law that said not within 100 feet of shore but they are the only ones who could enforce it.**
>
> Alderman Cignotti stated that we might need to work on it with the County.
>
> **Mayor Whalen reviewed recent conversations he had with different folks in charge of water enforcement and said even though we as a community have a desire, there could be another agency that trumps us.** [emphasis added]

34. The minutes from the November 12, 2008 Board of Aldermen meeting note the following discussion related to the award of a bid for the Kenan Creek Bore Project in which WESSELL and others recognize the Town's limitations in its authority to restrict the use of the public waterways:

> Alderman Cignotti asked how long the process would be and Mr. Ames said he thought it would be about six weeks. Alderman Cignotti asked if Mr. Ames could find out the approximate time of completion because **another concern was whether we could keep motor traffic out of Kenan Creek** and we could possibly pursue having a kayak trail.
>
> **Mayor Whalen stated that the County has an ordinance in place to keep people from taking personal watercraft in there within 25 feet of the shore at no more than 5 miles per hour**. Mr. Ames noted that the Kenan Creek Bridge would cause problems because at high tide, jet skis cannot get in.
>
> Alderman Weeks stated that she would like to look into placing signage in there. **Mr. Wessell expressed the need to have specific authorization from the General Assembly**.

Alderman Cignotti asked if that would be the only way to designate a kayak trail and **Mr. Wessell said he did not think the Town had the authority to say other boats could not go there unless that authority is given to us by the General Assembly**. He noted that this would be different than setting a "No Wake Zone." [emphasis added]

35.     The minutes from the July 12, 2012 Planning Board meeting note that former Mayor Pro Tem Susan Collins reported on "Jet Skis," informing the Board that WESSELL, the Town Attorney, stated he spoke with the County Attorney that week and that he would try to have something on the August agenda.

36.     The minutes from the August 12, 2012 Board of Aldermen meeting note that:

[A]t the Board's 2012 retreat, the Board indicated an interest in further regulating the operation of personal watercraft in the vicinity of the bridges for safety and because of the deterioration under the bridges created by the 'rooster tail' that comes out some of the jet skis…

The Board ultimately adopted an ordinance which sought to extend the distance of the No Wake Zone from the bridge from 20 feet to 100 feet.

37.     The minutes from the March 12, 2015 Board of Aldermen meeting reference the following discussion considering an amendment to the UDO which would allow Boat Rental Facilities, but prohibiting personal watercraft, in the C-3 commercial zoning district for a private property located at 96 West Salisbury Street:

Alderman Weeks clarified that this meant no personal watercraft in C-3 and asked how this would affect the boat ramp area where personal watercraft is being rented. Mr. Wessell said, "*It does not affect that. As I understand the way the ordinance is written, it's unlawful for people to rent personal watercraft on the beachfront and this doesn't change that.*" Mr. Owens said for the most part, he has been operating on the other side of the drawbridge in the D.O.T. right of way in Wilmington. Mr. Wilson said, "*We've approached him in the past and we've asked D.O.T. for help too; but the way we understand it, he is not conducting business at Wrightsville Beach; it's where he's taking the money.*" Alderman Weeks noted that they were being launched right beside the boat ramp. [original emphasis]

38.     The following are accurate representations of statements[11] made by Town Officials on March 12, 2015 after a presentation on the proposed amendment:

Alderman WEEKS: "So, this applies to C-3 …"

Mayor BLAIR: "Yep."

Alderman WEEKS: "No personal watercraft…"

Mayor BLAIR: "Correct.  That would be in this conditional use."

Alderman WEEKS: "So, what happens around the boat ramp?"

Alderman KING: "What happens to what?"

Mayor Pro Tem MILLS: "At the boat ramp… ***is that our jurisdiction?***"

Alderman WEEKS: "Where… personal watercraft are being rented… How does this affect that?"

Attorney WESSELL: "It does not affect that.  As I understand the way the ordinances are written, it's unlawful for people to rent personal watercraft on the beachfront… And that doesn't change… This doesn't change that."

Alderman WEEKS: "But it's being done."

Attorney WESSELL: "I can't speak to that."

Mayor Pro Tem MILLS: "Is that that one, anchored up under the bridge?"

Mayor BLAIR: "Yeah."

*(inaudible)*

Town Manger OWENS: "Tony can definitely talk about that.  **I think he (MANGUM), basically, for the most part's been operating on the other side, in the D.O.T. Right-of-Way…**"

Mayor Pro Tem MILLS: "Yep."

Town Manger OWENS: **"…in Wilmington."**

Mayor BLAIR: "So, he's off our side, mostly?"

---

[11] Video of the March 12, 2015 Board meeting is posted at https://vimeo.com/122110209. The discussion begins shortly after the 1:30:40 mark.

| | |
|---|---|
| Planning Dir. WILSON: | "Yes, and we've… we've approached him in the past and asked the D.O.T. for help, too, **but the way we understand he was conducting business was _not_ at Wrightsville Beach**, as far as taking money…" |
| Mayor Pro Tem MILLS: | "Right. He didn't have an office here, he didn't take money here…" |
| Alderman WEEKS: | "But they're being launched right beside the boat ramp." |
| Planning Dir. WILSON: | "They are, yeah." |
| Mayor BLAIR: | "Well, so we don't get that issue confused with what we're doing today… but I agree with you, we need to break that up." |
| Alderman WEEKS: | **"Want to make sure [we're] nippin' it in the bud."** |

39.    At the following meeting on April 08, 2015, Weeks once again let her disdain for jet skis become prevalent during the Board's follow-up consideration of the conditional-use permit application to allow a Boat Club Rental facility in the C-3 District. The following are accurate representations of statements[12] made by Town Officials at that time:

| | |
|---|---|
| Mayor BLAIR: | "Anyway, anybody have any questions for Tony?" |
| Alderman WEEKS: | "_So, jet skis…_" |
| Attorney WESSELL: | "You… you can't operate jet… you remember when we adopted the def- the ordinance is in there, Lisa. We adopted, I guess, last time. It said specifically, jet skis, personal watercraft, cannot be rented from this, or operated from this [location]…" |
| Alderman WEEKS: | "Because vehicle for hire with under six passengers, that isn't a jet ski, then?" |
| Attorney WESSELL: | "Well, actually…" |
| Alderman WEEKS: | "Personal watercraft…" |

---

[12] Video of the April 08, 2015 Board meeting is posted at https://vimeo.com/124550435. The discussion begins shortly after the 1:27:35 mark.

> Attorney WESSELL: "Tony's got current water-based uses allowed in the C-3 district because another water-based use is not listed and that's what we're talking about tonight, which is a boat-rental facility."
>
> Alderman WEEKS: **"I just want to make sure no jet skis…"**

40.     In May of 2015, seemingly inspired by Weeks' desire to start *"nippin' it in the bud,"* OWENS took it upon himself to interfere with WB-JSR's marketing efforts by underhandedly contacting a local tourism website to ask that WB-JSR's business listing be removed.  At this point, Defendants had not yet decided to issue Plaintiffs civil citations for their alleged zoning violations.

41.     The following month, Weeks spoke publicly about her concerns over jet skis and other personal watercraft in the AIWW.  A June 11, 2015 article published[13] in the Lumina News, a newspaper circulated locally and online, includes the following:

> Alderwoman Lisa Weeks suggested, during the board's July meeting, it reexamine all the areas the town regulates boat and personal watercraft use and consider expanding no-wake zones, especially in Banks Channel. She was concerned with the dangers posed by motorboats and Jet Skis not only to the marshland, but also to the many people who play in the water.
>
> "The bigger picture for me, is . . . water use is evolving," she said. "If I'm on a boat, I have to be constantly alert for paddleboarders, swimmers and kayakers. … With Wrightsville Stand-Up Paddleboard there, there's a gazillion people launching their paddleboards and it's just not a safe situation anymore."

42.     The Board has not banned the use of personal watercraft in the AIWW.

43.     Upon information and belief, Weeks' attempts to limit the use of jet skis and other types of personal watercraft in the AIWW were motivated by improper personal reasons, including her desire to avoid having "to be constantly alert" for personal watercraft whenever she went boating in the coastal waterways.

44.     Upon information and belief, OWENS' conduct and actions taken against MANGUM and WB-JSR were motivated by an improper personal desire to limit the use of jet skis and other types of personal watercraft in the AIWW.

---

[13] http://luminanews.com/2015/06/town-passes-jet-ski-ordinance/.

45.     MANGUM did not learn about OWENS' website request until more than a year later. On June 15, 2016, after noticing WB-JSR was no longer listed among the other local businesses offering recreational watersport activities, MANGUM emailed Karen Warren, Visitor Services Manager of Wilmington and Beaches CVB (Convention and Visitors Bureau) - *"The Official Tourism Development Authority for New Hanover County"* – asking how he could get his business information placed back on their site.  Karla Thompson, the site's Technology Systems Administrator, responded:

> Chris,
>
> While we used to have this business listed on our website, in May 2015 we were asked to remove the listing by the Town of Wrightsville Beach.
>
> Any questions regarding this listing should be directed to the following contact:
> Tim Owens
> Town Manager
> Wrightsville Beach

46.     Upon information and belief, WB-JSR is the only business OWENS requested to be removed from the site, despite having no apparent or actual authority to make such a request, as the location of WB-JSR's principle place of business and registered office address on file with the N.C. Secretary of State's Office is in Wilmington, NC.

**II.     Civil-Citations Issued; Appeals Denied; Requests for Hearings Ignored**

47.     In or around July 2015, despite the absence of any change in state or local law, the Town began issuing MANGUM citations with **$50.00** civil penalties for alleged zoning violations whenever he and/or his jet skis were spotted in or around the N.C. Wildlife Public Boating Access Area, the D.O.T. drawbridge right-of-way, or in the AIWW.  The citations were initially inconsistent in identifying the underlying UDO provision giving rise to the violation, but most charged MANGUM with violating zoning ordinance § 155.1.12.3[14], usually noting "certificate of zoning not issued."  Every citation issued to MANGUM from 2015 through 2017 was written by Wrightsville Beach Park Ranger Shannon Slocum at the direction of OWENS.

---

[14] *See* **Exhibit 1** at 6.

48.     Members of the public are not required to obtain a certificate of zoning compliance in order to use and enjoy the N.C. Wildlife Commission Public Boating Access Area, the D.O.T. drawbridge right-of-way, or the AIWW.

49.     Members of the public are not subject to the UDO's restrictions and requirements when using and enjoying the N.C. Wildlife Public Boating Access Area and adjacent D.O.T. right-of-way, because, as mentioned above, the plain and unambiguous language of the UDO states that such lands are clearly exempt from its jurisdiction.

50.     MANGUM received at least (8) citations in 2015, (14) in 2016, and (7) more in 2017.

51.     UDO § 155.1.12.8[15] sets forth the notice and procedural requirements that the UDO administrator must provide persons accused of UDO violations.  Subsection § 155.1.12.8(B) applies to the issuance of a written notice of violation and requires that the notice, "advise the person responsible for such violation that the UDO Administrator's decision or order may be appealed to the Board of Adjustment in accordance with subsection 155.4.4.1[16]".

52.     None of MANGUM's citations properly advised him of his appeal rights.

53.     Instead, the citations were written on the same pre-printed form used by Town police for non-zoning civil code violations which included the following language:

> This citation and your payment should be returned by mail or in person to the Town of Wrightsville Beach, PO Box 626, 321 Causeway Dr., Wrightsville Beach, NC 28480.
>
> Failure to pay the penalty within 14 days after being cited for any violation shall subject the offender to a civil action in the nature of debt in accordance with the provisions of G.S. Ch. 160A-175.
>
> You may appeal this citation to the Chief of Police within 14 days of the date of violation.  Your written appeal should be mailed to the Wrightsville Beach Police Department, PO Box 452, 3 Bob Sawyer Dr., Wrightsville Beach, NC 28480.
>
> Both an overview of the appeal process and the form itself may be found at http://www.towb.com.
>
> **APPEALS MUST BE NOTARIZED TO BE CONSIDERED.**

[original emphasis]

---

[15] *See* **Exhibit 1** at 7.
[16] *See* **Exhibit 1** at 12-13.

54.     MANGUM filed timely appeals with the Police Chief in accordance with the notice provided on the citations, but all were either ignored or denied. UDO § 155.4.4(G)[17] provides:

> An appeal of a notice of violation or other enforcement order **stays enforcement of the action appealed from** unless the official who made the decision certifies to the Board of Adjustment after notice of appeal has been filed that because of the facts stated in an affidavit, a stay would cause imminent peril to life or property or because the violation is transitory in nature, a stay would seriously interfere with enforcement of the ordinance. [emphasis added]

55.     MANGUM was eventually told by Town officials that he could only appeal to the Board of Adjustment, not the Chief of Police, and only upon payment of the **$500.00** nonrefundable fee identified the Town's *Application for Zoning Appeal*[18].

56.     The Town sent MANGUM a letter dated September 9, 2015 enclosed with a copy of UDO § 155.4.4 – *Appeals, Variances, and Interpretations*. The letter did not mention or make any reference the **$500.00** non-refundable "appeal fee" required to be paid before any appeals would be accepted and before any hearings would be scheduled for consideration before the Board.

57.     On October 14, 2015, OWENS sent an email to Town employee Patty Benjamin telling her to void the citations issued against MANGUM in 2015, writing, "*Please waive all of these civil citations. I was looking for compliance and I believe it worked.*" OWENS emailed Chief of Police Dan House on November 10, 2015 asking for verification that the citations were voided.

58.     From 2015-2017, MANGUM continued to operate WB-JSR in the same or similar manner as he had been doing for the past seventeen years. Despite MANGUM's repeated timely appeals of the citations issued to him, in accordance with the notices provided, the Town did not stay enforcement of the action, nor did the Town provide MANGUM any opportunities for a proper hearing before the Board for a determination on the merits of the enforcement actions.

59.     The Town was fully aware of the measures taken by the Defendants OWENS and WESSELL against MANGUM and WB-JSR in their efforts to address, what Defendants considered,

---

[17] *See* **Exhibit 1** at 12-13.
[18] A true and accurate copy of the *Application for Zoning Appeal* is included in **Exhibit 12** at 10-11, attached hereto and fully incorporated by reference below.

the ongoing "Jet Ski rental problem." The minutes from the August 2, 2016 Wrightsville Beach Planning Board meeting note the following discussion as part of "Old Business":

> Ms. Partin[19] asked about the status of the Jet Ski rental problem. **Mr. Wilson said Town Staff and the Town Manager and Attorney are addressing the issue**. [emphasis added]

60.     MANGUM repeatedly sought to resolve the ongoing dispute and hired multiple attorneys who directly contacted WESSELL on his behalf. Letters and emails[20] written by WESSELL in response contradict his previous opinion regarding the legality of MANGUM operating WB-JSR, a business licensed in Wilmington, on the public land.

61.     WESSELL pointedly stated that MANGUM would have to follow the appropriate procedures for an appeal to the Board of Adjustment. Despite having full knowledge of the process, he did not inform that undertaking such an appeal would require payment of the **$500.00** non-refundable "appeal fee,"

### III.   Debt-Setoff Act Provides MANGUM Another Hearing Opportunity; Town Instead Files Lawsuit After MANGUM Privately Informs Town Officials About Possible Conflicts of Interest

62.     In a June 02, 2017[21] email from OWENS to MANGUM, which cc'd Planning Director Tony Wilson and Finance Director Erica Walters, OWENS attached copies of thirteen letters from Walters to MANGUM dated May 26, 2017 which provided "**Notice of Debt Owed to the Town of Wrightsville Beach Intention to Setoff Debt**" for each of the individual **$50.00** civil penalties assessed in 2016, along with copies of twelve of the underlying citations. OWENS offered to waive the citations, and void any others not included, explaining that he would outline the conditions of waiving the citations in a letter the next week.

63.     OWENS sent MANGUM a letter[22] dated June 06, 2017, in which OWENS acknowledged that he had previously, at his own discretion, dismissed a number of citations issued in

---

[19] Vivian "Zeke" Partin is/was a member of the Planning Board.
[20] True and accurate copies of WESSELL's June-Nov. 2016 correspondence are attached hereto as **Exhibit 3** and fully incorporated by reference.
[21] True and accurate copies of the June 02, 2017 email from OWENS and its attachments are attached hereto as **Exhibit 4** and fully incorporated by reference.
[22] A true and accurate copy of the June 06, 2017 letter from OWENS to MANGUM is attached hereto as **Exhibit 5** and fully incorporated by reference.

2015 against MANGUM, and offered not to take any action on other outstanding civil citations in exchange for MANGUM signing an agreement to not rent jet skis within the corporate or extraterritorial limits of the Town; OWENS warned MANGUM that noncompliance with the proposed agreement would result in OWENS reinstating the civil citations with all fines due immediately, threatening that the Town would "*take all available legal steps to collect the fines*". MANGUM did not sign the agreement.

64.     On June 07, 2017, MANGUM declined the offer to sign the agreement and instead delivered a written request for a formal hearing under the Debt-Setoff Act procedures in accordance with the earlier provided **Notices**.

65.     The Town did not respond to MANGUM's June 07, 2017 written hearing request.

66.     On July 19, 2017, MANGUM emailed[23] OWENS to inquire about the status of his Debt-Setoff hearing request. The following day, OWENS responded by email informing MANGUM that the initial Debt Setoff letters were no longer applicable because the Town had sent him a second letter, which was applicable. OWENS did not explain why the first letters were inapplicable. MANGUM complained about the confusion and did not see why he needed to once again request a hearing after having already done so. MANGUM also addressed concerns about the personal nature of their dispute and about a statement OWENS previously made, that "s*ome people get caught speeding and some people don't*," in response to a previous complaint by MANGUM about the selective enforcement when he asked, "*why I'm the only one that gets tickets*."

67.     The final email from OWENS told MANGUM he had 30 days to appeal, and that if he would like to appeal, "*please put that in writing and I will set a hearing date for you. Otherwise, the citations will get sent to the State for collections*."

68.     MANGUM again filed a timely written appeal requesting a hearing on the debt. OWENS did not set a hearing date, nor did the citations get sent to State for collections.

---

[23] True and accurate copies of the July 19-20, 2017 emails between MANGUM and OWENS are attached hereto as **Exhibit 6** and fully incorporated by reference.

69.     On August 07, 2017, the Town Finance Officer emailed[24] MANGUM acknowledging receipt of his request for a debt setoff hearing and asked his availability for scheduling. She indicated that she, OWENS, and WESSELL would be present at the hearing.

70.     On or around August 08, 2017, questioning the fairness of a hearing presided over by OWENS and WESSELL, MANGUM sent private text messages to various Town representatives, including Mayor Bill Blair, raising concerns over a rumor that an improper relationship amongst certain Town Officials may have created a conflict of interest that was obstructing his ability to have his previous appeals of the citations set for a hearing before the Town Board.

71.     On August 11, 2017, Defendants, without any notice or warning, abandoned proceedings under the Debt-Setoff Act and instead filed a civil action in New Hanover County Superior Court against MANGUM and WB-JSR to recover the unpaid civil penalties assessed under the UDO and to obtain permanent injunctive relief enjoining any further use of land within the town's corporate and extraterritorial jurisdiction which, as Defendants claimed, violated the UDO.

72.     Upon information and belief, the sole purpose of Defendants' decision to file the civil action was to suppress to speech critical of the conduct of officials in their duties or fitness for office.

## IV.     Injunction Entered Despite Absence of Any Court Appearance or Hearing on Merits in Violation of State Law

73.     To defend against the Town's lawsuit and pursue possible counterclaims, MANGUM hired an attorney who ultimately failed to make an appearance with the Court, did not file a response or otherwise answer the Town's Complaint, and eventually withdrew representation in the case, leaving MANGUM to defend the individual claims pro se and WB-JSR without counsel.

74.     Shortly after MANGUM's former counsel withdrew, Defendants presented MANGUM with a proposed Consent Judgment and told him he would need to sign it to avoid an entry of default. The judgment waived the fees charged from the citations but enjoined MANGUM and WS-JSR from

---

[24] True and accurate copies of the August 07-15, 2017 emails between MANGUM and the Town Finance Officer are attached hereto as **Exhibit 7** and fully incorporated by reference.

"operating a business involving the rental of jet skis in the Town of Wrightsville Beach or in the Town's extraterritorial jurisdiction."

75.     The Town approved the Consent Judgment during the March 08, 2018 Board of Aldermen meeting following a closed session taken for advisement by the Town Attorney:

> **Mr. Wessell presented a Consent Judgment to settle a complaint with Wrightsville Beach Jet Ski Rentals**… Mayor Pro Tem Mills made the motion to accept the Consent Judgement in the Town's Complaint against the Jet Ski Rental Business… The motion was seconded by Alderman Miller and unanimously approved. [emphasis added]

76.     MANGUM did not want to sign the Consent Judgment, and only agreed to do so to avoid the entry of a default judgment.  He was then informed that he was not allowed to sign the judgment as a representative of his company; an attorney for WB-JSR would need to sign on its behalf. MANGUM secured help from an attorney who agreed to represent WB-JSR for the express limited purpose of signing the Consent Judgment to avoid default.

77.     MANGUM signed the Consent Judgment[25] on April 10, 2018; it was not signed and entered by the Court until April 25, 2018.  At no point did the parties appear before the Court for a hearing on the merits of the action prior to its entry.

78.     The equitable relief sought in the civil action filed by Defendants to enjoin MANGUM and WB-JSR from violating the UDO can only be properly awarded by a Court in accordance with Rule 65 of the North Carolina Rules of Civil Procedure.

79.     By obtaining the restrictive injunctive relief against MANGUM and WB-JSR without first providing the parties a hearing before the Court for a determination of the merits of the action, the Town failed to comply with Rule 65 of the North Carolina Rules of Civil Procedure and thus violated the statutory requirements of N.C.G.S. 160A in obtaining such relief.

80.     MANGUM appeared at the May 10, 2018 Town Board Meeting and spoke during the public comment period to address his safety concerns stemming from the restrictions in the Consent

---

[25] A true and accurate copy of the April 25, 2018 Consent Judgment is included in **Exhibit 10** at 5-11, attached hereto and fully incorporated by reference below.

Judgment and asked for the Board's assistance and cooperation address those concerns. As reflected in the official Town minutes of the meeting:

> Mr. Chris Mangum said, "I own Wrightsville Beach Jet Ski Rentals. The resolution that has been given to me brings up a lot of concerns for my company and the Town of Wrightsville Beach. I am hoping we can reach a better resolution that is acceptable to both of us. For the past seventeen years, the area around the bridge has been a designated spot for getting on jet skis, paddleboards, and kayaks. In this area, the water is shallow and extremely safe. The boat ramp can be congested at times and can be very problematic for any of these activities. While I always use the boat ramp on a daily basis, we would like to be able to keep using the shallow calm area beside the boat ramp to board only during congested times. This area has been proven over time to be ideal for smaller vessels such as kayaks, paddleboards and jet skis. Thank you for your time and consideration of this proposal. I welcome any questions at this time or I would be more than happy to sit down with you one on one to discuss this further."

81.     Defendants apparently thanked MANGUM for his comments, but his concerns and requests were otherwise ignored.

82.     Before appearing at the May 10, 2018 meeting, MANGUM personally delivered and emailed a letter[26] to the Mayor and Board members asking for assistance in resolving the dispute with OWENS and the Town. When Defendants failed to respond to his first letter and comments, MANGUM delivered and emailed a final letter[27] to the Mayor and Board with a proposal that he be allowed to continue operations *"similar to the other recreational water sport companies in that area that launch to the left and/or right of the boat ramp,"* explaining that the situation had seriously impacted his livelihood as he had postponed operations of his business as he awaited direction from the Board. Once again, the Town did not respond.

### V.     Mangum Leases WB-JSR Equipment to Mitigates Losses; CCW Operates Similar to Other Recreational Water Sport Companies at Public Boating Access Area

83.     One of the recreational water sport companies referenced by MANGUM in his letters is Genesis Motorsports, LLC ("Genesis"), a jet ski rental company that began operating in 2016. Genesis and WB-JSR conducted their business operations in nearly identical fashion, collecting

---

[26] True and accurate copies of MANGUM's May 07, 2018 email and letter to the Board are attached hereto as **Exhibit 8** and fully incorporated by reference.
[27] A true and accurate copy of MANGUM's May 14, 2018 follow-up email to the Board is attached hereto as **Exhibit 9** and fully incorporated by reference.

payments from renters outside the Town's jurisdiction and launching jet skis from N.C. Wildlife Commission Public Boating Access Area into the Intracoastal Waterway, where customers would take control of the watercraft.

84.     After Genesis began operating alongside MANGUM in 2016, the Town continued to issue MANGUM civil citations, but did not issue any to Genesis until MANGUM complained that he was being treated unfairly due to the unequal enforcement of the UDO.

85.     Upon information and belief, Genesis has also refused to pay the civil penalties.

86.     Defendants did not seek collection of the unpaid fines issued against Genesis in 2017 under the Debt-Setoff Act, despite their having operated alongside MANGUM for two seasons, and despite not having paid any of the civil fines issued under the UDO.

87.     Defendants did not file a civil action against Genesis in 2017 to collect civil penalties or enjoin operation of its business, despite having operated alongside MANGUM for two seasons, and despite not having paid any of the civil fines issued under the UDO.

88.     MANGUM has repeatedly complained to Town officials and employees about what he perceived to be unfair, selective, and targeted enforcement of the UDO against him by OWENS.

89.     In or around April 2018, Genesis continued its jet ski rental operations utilizing the public boating access area and adjoining intracoastal waterway without any interference from the Defendants.  Genesis publicly and openly marketed its operation being located at the public boating access area and under the D.O.T. drawbridge.  The Town did not issue Genesis any citations for zoning violations when it was the only jet ski rental business operating at the public area during April and May of 2018.

90.     In June 2018, after suspending WB-JSR's consumer rental operations, MANGUM entered into a commercial equipment leasing agreement with another jet ski rental business, Carolina Coast Watersports, LLC, exclusively owned and operated by SEITTER, in order to mitigate business income losses resulting from the restrictions in the Consent Judgment.

91.     On June 16, 2018, SEITTER began operating CCW in the same or similar fashion as Genesis by launching the jet ski equipment leased from WB-JSR from the public boating access area

into the intracoastal waterway. Operators for Genesis were already on-site conducting rentals by the time SEITTER first arrived at the public boating access area. MANGUM was also present to ensure SEITTER safely and properly launched the leased equipment into the intracoastal waterway. MANGUM did not conduct any monetary transactions, make arrangements for the rental of jet skis with customers or potential customers, or provide anyone instruction on the operation of jet skis.

92. The terms of Consent Judgment provide that MANGUM is allowed to be present at the boat ramp if his activities are strictly limited to the launching of jet skis into the water.

93. Within minutes of appearing at the boat ramp on June 16, 2018, Park Ranger Shannon Slocum arrived and began questioning MANGUM. Slocum ultimately issued SEITTER a **$50.00** citation for operating a business in violation of the UDO. Slocum did not issue MANGUM a citation. Upon information and belief, Slocum did not issue any citations to operators for Genesis that were also present at the boating access area, even though Slocum had previously issued citations to Genesis personnel in 2016 and 2017.

94. Upon information and belief, Slocum was directed by OWENS to specifically target MANGUM on June 16, 2018. Affidavits provided by Town officials in Defendants' Amended Motion[28] for Contempt indicate their response to MANGUM's presence at the drawbridge and public access area. Apparently, Wm. B. Squires, the Town Public Works Director, initially observed MANGUM and two other people **under the drawbridge**. Squires stated in his August 7, 2018 affidavit, "*Upon observing Mr. Mangum, I immediately contacted the Town Manager to advise him of this activity*." Slocum's August 8, 2018 affidavit states, "*On June 16, 2018 I received a call from Town Manager, Tim Owens, indicating that Mr. Christopher Mangum was renting jet skis **under the drawbridge** [emphasis added]*," and, "*It appeared to me that Mr. Mangum was conducting a rental business of jet skis, as life jackets were on the ground. The jet skis appeared to be the same jet skis as last year.*" Yet, as stated above, Slocum did not issue MANGUM a citation.

_____
[28] A true and accurate copy of Defendants' August 10, 2018 Amended Motion and supporting exhibits is attached hereto as **Exhibit 10** and fully incorporated by reference.

95. A point that bears repeating is that the Defendants **do not have jurisdiction** to enforce the UDO at the D.OT. drawbridge right-of-way or the Public Boating Access Area.

96. The following day, June 17, 2018, SEITTER continued operations for CCW. That morning, MANGUM also returned to the boat ramp to ensure the leased equipment was safely and properly launched into the water. Once again, operators for Genesis were also on site.

97. Within minutes of their arrival, MANGUM noticed a WB police officer on a nearby boat who appeared to be photographing MANGUM's activity. Believing the officer was attempting to collect evidence of him violating the UDO, and worried that only he would be targeted, MANGUM contacted the authorities and reported potential zoning violations being committed by Genesis.

98. Shortly thereafter, two WB police officers arrived and began questioning MANGUM And SEITTER. One officer told MANGUM that he was not allowed to be there. MANGUM explained that he was no longer in the business of renting jet skis. The officers ultimately issued SEITTER another citation for allegedly violating the UDO. They did not issue MANGUM a citation.

99. Upon realizing that the officers were issuing SEITTER a citation, MANGUM raised concerns as to why operators for Genesis were not also being issued a citation for the violation, once again questioning the apparent selective enforcement and demanding that the laws be applied fairly and equally. At this point, the officers decided to issue a citation to Genesis as well.

100. The Town did not issue Genesis or its operators any citations for zoning violations before SEITTER and MANGUM appeared at the public boating access area on June 16-17, 2018 with the jet skis leased from WB-JSR.

101. MANGUM did not appear at the boat ramp or drawbridge right-of-way after June 17, 2018. From that point on, Defendants continued to sporadically issue SEITTER citations for UDO violations, but took no further action to prevent or enjoin the allegedly illegal activities being conducted by SEITTER, CCW, and Genesis.

**VI.     SEITTER Appeal Ignored; Town Instead Files Motion to Hold MANGUM in Civil Contempt, Successfully Seeks Relief Only Available for Criminal Contempt**

102.     On June 29, 2018, SEITTER filed timely appeals with the Police Chief in accordance with the notice provided on the citations.  Later that same day, Richann Moore, an Administrative Assistant for the WBPD, responded to SEITTER in an email informing him that zoning appeals must be taken to the Board of Adjustment.  Attached to the email was a copy of the *Zoning Appeal Application*, which included the demand for payment of the **$500.00** non-refundable "appeal fee."

103.     In a letter[29] to the Town dated July 20, 2018, the undersigned counsel gave notice of SEITTER's zoning appeal to the Town Clerk, in accordance with state law, as well as the Planning Department, as required by the application, and requested an expedited hearing before the Board.

104.     Defendants did not timely respond to SEITTER's request for an appeal.

105.     Rather, on July 26, 2018, upon receipt of SEITTER's notice of appeal, Defendants filed a Motion to hold MANGUM in civil contempt of court, alleging that his presence at the Public Boating Access Area on June 16th & 17th were willful violations of the Consent Judgment.  Defendants thereafter filed an Amended Motion with required affidavits from Town officials and officers that would form the basis of an Order[30] finding MANGUM in contempt which subjects him to incarceration upon noncompliance of its punitive purge conditions.

106.     During the August 21, 2018 civil contempt hearing, Defendants called MANGUM to the stand to procure testimony that would be used against him.  At the close of the hearing, Defendants then sought relief in the form of punitive damages and attorneys' fees, along with a provision for MANGUM's incarceration upon noncompliance.  Those punitive remedies are only available under the N.C. criminal contempt statutes, but were still awarded over objection.  There was no prior indication that Defendants would seek criminal contempt remedies, and thus no warning that would have allowed MANGUN the opportunity to exercise his 5th Amendment right to be free from self-incrimination at the time he was called to testify.

---

[29] A true and accurate copy of SEITTER's July 20, 2018 Notice of Appeal is included in **Exhibit 12** at 2-4, attached hereto and fully incorporated by reference below.

[30] A true and accurate copy of the September 10, 2018 Contempt Order is attached hereto as **Exhibit 11** and fully incorporated by reference.

107.    On August 23, 2018, an article with the headline, "Wrightsville Beach wins judgment against boat ramp jet ski operator, seeks other enforcement action" was published[31] in the Lumina News.   The article detailed the result of MANGUM's contempt hearing and included statements provided by OWENS.  Part of the article reads:

> Owens said that while Mangum had agreed to stop running the business from under the bridge, town officials found he was still conducting operations from the spot, despite launching the jet skis from the boat ramp. Owens added that while Mangum sold the business to another operator, he still had directly involved in operation of the business, including using his personal vehicle, answering business phone calls and carrying a clipboard.

> "We have to be pretty strict about operating businesses on town property," Owens said. "Businesses have to operate with the permitted and conditional uses. They can't just operate in rights-of-ways.  We wouldn't allow someone to operate a business in Wynn Plaza or at the park."

108.    MANGUM had not, in fact, sold his business.  MANGUM was not directly involved in CCW's business operations, did not answer business phone calls, and, whether relevant or not, had not been "carrying a clipboard" for purposes of CCW's operation.  Again, MANGUM had not been present at the boat ramp or drawbridge since June 17, 2018.  Further, at no point were MANGUM, WB-JSR, SEITTER, or CCW ever "operating businesses on town property."  The property is owned and maintained the State of North Carolina.  OWENS was aware of these facts, yet stated otherwise.

109.    On August 23, 2018, OWENS also emailed[32] the undersigned counsel to address SEITTER's appeal after the issue was raised during MANGUM's contempt hearing.  OWENS, at his own discretion, dismissed one of SEITTER's citations and provided an opportunity for a hearing on the appeals of the remaining citations, but only upon SEITTER's payment of the **$500.00** non-refundable "appeal fee."

110.    At all times relevant, OWENS acted as the Town Zoning/UDO Administrator.

---

[31] http://luminanews.com/2018/08/wrightsville-beach-wins-judgment-against-boat-ramp-jet-ski-operator-seeks-other-enforcement-action/.
[32] True and accurate copies of the August 23, 2018 email and attachments from OWENS are attached hereto as **Exhibit 12** and fully incorporated by reference.

111.    A municipal zoning administrator/officer is not vested with the authority to dismiss or foreclose an appeal based on their own legal determinations.

112.    Upon notice of an appeal, the plain language in applicable state zoning statute specifically mandates that the zoning officer forward the documents constituting the record to the Board for a hearing—an act that is ministerial in nature, involving no discretion.

113.    Plaintiffs have a clearly established right to an appeal of the zoning decisions for a determination of the merits of the decision at a hearing before the Board of Adjustment.

114.    As a direct and proximate result of the conduct of the Defendants and their enforcement of the policies complained of herein, Plaintiffs have been deprived of any opportunity to be heard at a meaningful time and in a meaningful manner despite numerous attempts to exercise their constitutional and statutory rights of appeal.

115.    As a result of the Defendants' conduct, MANGUM feels stripped of his livelihood and fears that any attempt to visit WB or otherwise use the public lands and public trust waters, even for his own personal enjoyment, will result in further violations or retaliation from Defendants.

## FIRST CLAIM FOR RELIEF

### Declaration that the "Appeal Fee" Ordinance Violates Due Process/Law of the Land
### (28 U.S.C. § 2201; 42 U.S.C. § 1983)

116.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

117.    Plaintiffs bring this action pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.  This Court has jurisdiction over the parties, and there is a justiciable case and/or controversy between the parties regarding the constitutionality of the "appeal fee" provision set forth in UDO § 155.2.9(B).

118.    Section 1983 of Title 42 of the United States Code provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983.

119.    The 14th Amendment to the U.S. Constitution provides, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

120.    Article I, § 1 of the North Carolina Constitution provides, "We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyments of the fruits and their own labor, and the pursuit of happiness."

121.    Article 1 § 19 of the North Carolina Constitution provides, "No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land.  No person shall be denied the equal protection of the laws…."

122.    Article I, § 35 of the North Carolina Constitution provides, "A frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty."

123.    The "procedural" component of the Due Process Clause guarantees that the state shall not deprive a person of property without a constitutionally adequate process.

124.    The constitutional right to procedural due process requires that the state afford both notice and a hearing before depriving a person of a protected property interest.

125.    Persons deprived of property through state action must be given an opportunity to be heard at a meaningful time and in a meaningful manner.

126.    The procedural safeguards set forth in the UDO fail to provide a constitutionally adequate post-deprivation remedy and the Town has refused to remedy the injuries caused by the unlawful takings of the Plaintiffs' guaranteed property and liberty interests.

127.    The zoning appeal procedures set forth in the UDO are fundamentally unreasonable and unfair, in that UDO § 155.2.9(B) requires payment of a non-refundable fee in an amount that is

ten times greater than the amount of the penalties assessed in the underlying decision which could be waived or overturned in the event of success on appeal.

128.     UDO § 155.2.9(B) further violates the substantive due process rights of Plaintiffs and all those similarly situated by depriving persons subjected to adverse zoning decisions of their clearly established rights to free speech, protest, and equal protection of the laws.

129.     The Town's policy implementing a **$500.00** non-refundable zoning "appeal fee" for adverse zoning decisions, including the **$50.00** civil citations issued to Plaintiffs', is an arbitrary, capricious, and maliciously punitive measure which constitutes an abuse of discretion that could not have been the result of a reasoned decision.

130.     Plaintiffs and all those similarly situated have suffered and will continue to suffer material injury by reason of the failure of the Town of Wrightsville Beach to provide adequate procedures required by the Constitution of the United States and the North Carolina Constitution.

131.     Plaintiffs have the right, therefore, to have this Court issue a declaratory judgment on these and any other issues that may arise during the course of litigation.

## SECOND CLAIM FOR RELIEF
### Declaration that the Adoption/Enforcement of Zoning "Appeal Fee" Ordinance Exceeded the Scope of the Town's Statutory Authority
### (28 U.S.C. § 2201; N.C.G.S. § 160A-4)

132.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

133.     Pursuant to N.C. Const. Act. VII, § 1 and N.C. Gen. Stat. § 160A-4, North Carolina municipalities only have authority to execute the powers, duties, privileges, and immunities conferred upon them by the General Assembly.

134.     Pursuant to N.C. Const. Act. VII, § 1 and N.C. Gen. Stat. § 160A-4, municipalities in North Carolina do not have the have authority to exercise powers contrary to State or federal law or the public policy of the State.

135.     The N.C. General Assembly has not authorized the Town to collect "appeal fees" from persons seeking appeals of adverse zoning decisions.

136.     Plaintiffs are informed and believe and therefore allege that UDO § 155.2.9(B) is invalid in that said Ordinance fails to comply with statutorily mandated requirements of N.C.G.S. § 160A as it creates an undue burden on those seeking to appeal adverse zoning decisions by demanding an unauthorized **$500.00** non-refundable fee before allowing appeals to be set for a hearing before the Board for a determination on the merits of the zoning officer's decision, regardless of the amount of any civil penalties assessed in the underlying zoning decision.

137.     The Town therefore exceeded its statutory authority by enacting and enforcing the "Fees Ordinance," set forth in UDO § 155.2.9(B).

138.     Plaintiffs and all those similarly situated have suffered and will continue to suffer material injury by reason of the failure of the Town of Wrightsville Beach to comply with the procedures set forth in Chapter 160A of the North Carolina General Statutes.

139.     Plaintiffs are entitled to a judgment declaring that the Town exceeded its authority by enacting and enforcing the "appeal fees" provision set forth in UDO § 155.2.9(B).

140.     Plaintiffs are entitled to a judgment declaring that UDO § 155.2.9(B) is invalid, unenforceable, null, and VOID.

### THIRD CLAIM FOR RELIEF

**Declaration that UDO Enforcement at the Public Boating Access Area and adjacent D.O.T.
Drawbridge Right-of-Way Exceeds the Scope of the Town's Statutory Authority
(28 U.S.C. § 2201; N.C.G.S. § 160A-4)**

141.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

142.     The N.C. General Assembly has not authorized the Town to enforce zoning ordinances on state-owned land unless a building is involved.

143.     The N.C. General Assembly has not authorized the Town to enforce zoning ordinances in the State's public trust waters.

144.     The Town therefore exceeded its statutory authority by enforcing the UDO at the N.C. Wildlife Commission Public Boating Access Area, the D.O.T. drawbridge right-of way, and the Intracoastal Waterway.

145.    Plaintiffs are entitled to a judgment declaring that the Town exceeded its authority by enacting and enforcing UDO § 155.2.9(B).

146.    Plaintiffs are entitled to a judgment declaring that any and all civil citations, penalties, judgments, orders, and any other remedies or relief obtained by the Town as a result of its unlawful enforcement of the UDO at the N.C. Wildlife Public Boating Access Area, the D.O.T. drawbridge right-of-way, and the Intracoastal Waterway, are invalid, null and VOID, and of no effect.

## FOURTH CLAIM FOR RELIEF

**Declaration that Unlawfully Issued Citations, Penalties, Actions, & Orders or Judgments Obtained Therefrom, including the Consent Judgment & Contempt Order, are VOID (28 U.S.C. § 2201; 42 U.S.C. § 1983; N.C.G.S. § 160A-4)**

147.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

148.    For want of jurisdiction, and any other reasons stated herein, Plaintiffs and those similarly situated are entitled to a judgment from the Court declaring that all citations issued and penalties assessed by the Defendants which failed to provide adequate due process, or which were based on alleged UDO violations arising out of the use and enjoyment of the N.C. Wildlife Commission Public Boating Access Area, the D.O.T. drawbridge right-of-way, and the AIWW, are invalid, unenforceable, null, and VOID.  Accordingly, Plaintiffs MANGUM and WB-JSR also have the right, therefore, to have the Court declare that resulting Consent Judgment and Contempt Order are invalid, null and VOID, and of no effect.

149.    This action does not seek appellate review of the Consent Judgment or Contempt Order, which at the time of the filing of this action remains pending on appeal from the New Hanover County Superior Court, nor does it specifically seek a redress of injuries caused therefrom.  Regardless, because the Consent Judgment and its underlying civil action arise from local administrative zoning decisions to issue MANGUM citations and civil penalties for alleged zoning violations, which thereafter formed the basis of the Superior Court action, they "are beyond doubt subject to challenge in an independent federal action commenced under jurisdiction explicitly conferred by Congress." *Thana v. Bd. of License Comm'rs for Charles Cty., Md.*, 827 F.3d 314, 321 (4th Cir. 2016).

150.    Alternatively, as a result of the unconstitutional deprivations of Plaintiffs' due process rights, Defendants were without the authority to and lacked standing pursue claims to enforce the UDO and recover penalties in the civil action against MANGUM and WB-JSR.  Thus, the Superior Court did not have subject matter jurisdiction over the claims and relief sought therein, rendering the resulting Consent Judgement and subsequent Order of Contempt VOID.

151.    Alternatively, as a result of the Town's failure to comply with the statutory requirements set forth in § 160A and Rule 65 of the N.C. Rules of Civil Procedure before obtaining the injunctive relief provided in the Consent Judgment, the Superior Court was without the requisite subject matter jurisdiction to enter or enforce the judgment.  Accordingly, Plaintiffs MANGUM and WB-JSR have the right and are entitled to a judgement from the Court declaring that the Consent Judgment, and consequently the Contempt Order, are invalid, unenforceable, null, and VOID.

152.    Alternatively, the Contempt Order contains punitive purge conditions requiring the payment of damages and attorneys' fees to the Town at the risk of MANGUM being incarcerated upon noncompliance, but the Order is absent of any findings of fact concerning the Defendants' ability to comply with those terms, and thus fails to provide adequate protections required under due process of law to prevent the unlawful deprivation of MANGUM's personal liberty.  Plaintiffs MANGUM and WB-JSR have the right, therefore, to have the Court declare that the Contempt Order is invalid, unenforceable, null, and VOID.

## FIFTH CLAIM FOR RELIEF

**Violation of Right Procedural Due Process/Guaranteed Property Interest**
**(42 U.S.C. § 1983)**
[Defendant Town, Defendants OWENS and WESSELL, individually]

153.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

154.    The Defendants are persons under 42 U.S.C. § 1983.

155.    The Town and its agents acted under color of state law and in accordance with the official policies of the Town to deprive Plaintiffs of their rights, privileges, and immunities secured by

the Fourteenth Amendment of the United States Constitution and under the Civil Rights Act of 1971, 42 U.S.C. § 1983.

156.    The Defendants acted under the color and authority of state and local law to deprive MANGUM of his constitutionally guaranteed property interests by filing an action to collect unlawfully assessed civil penalties and improperly obtaining and an injunction which enjoins him from operating his lawful business.

157.    The taking of Plaintiffs' property was done in violation of the United States Constitution Amendment XIV which guarantees that no person shall be deprived of property without due process of law.

158.    The deprivations of Plaintiffs' federal rights alleged herein were directly and proximately caused by the individual acts and conduct of Defendants OWENS and WESSELL.

159.    The deprivations of Plaintiffs' federal rights are attributable to the enforcement of a municipal policy or custom.

160.    Defendants violated Plaintiffs' clearly established statutory and constitutional rights of which a reasonable person would have known.

161.    Defendants acted with malice and/or with reckless disregard of Plaintiffs' clearly established constitutional and statutory rights in order to deprive Plaintiffs of any opportunity to heard on the merits of their appeals and other grievances arising out of the Town's enforcement of the UDO, and to deprive Plaintiffs of their property and livelihood by restricting their ability to operate their lawful businesses or otherwise access the public lands and public trust waters reserved for the use and enjoyment of the citizens of North Carolina.

162.    Plaintiffs have suffered and continue to suffer actual damages as a result of the violations of their civil and constitutional rights by the Defendants, as described herein, and therefore are entitled to recover those damages pursuant to 42 U.S.C. § 1983.

163.    No adequate state remedy exists to provide relief for Plaintiffs' constitutional injuries alleged herein.

## SIXTH CLAIM FOR RELIEF

### Violation of Right to Substantive Due Process/Equal Protection of the Law
### (42 U.S.C. § 1983)
[Defendant Town, Defendants OWENS and WESSELL, individually]

164.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

165.    Plaintiffs have been treated differently from others with whom they are similarly situated.

166.    The unequal treatment was the result of intentional or purposeful discrimination.

167.    The Defendants acted under the color and authority of state law and/or under the color and authority of the UDO to take property from MANGUM by filing an action to collect unlawfully issued civil citations and securing an injunction enjoining him from operating his lawful business.

168.    The Plaintiffs have been deprived of their guaranteed liberty interest in the equal protection of the laws in violation of the United States Constitution Amendment XIV which guarantees that no person shall be deprived of liberty without due process of law.

169.    The deprivations of Plaintiffs' federal rights alleged herein were directly and proximately caused by the individual acts and conduct of Defendants OWENS and WESSELL.

170.    The deprivations of Plaintiffs' federal rights are attributable to the enforcement of a municipal policy or custom.

171.    Defendants violated Plaintiffs' clearly established statutory and constitutional rights of which a reasonable person would have known.

172.    The Defendants' enforcement of the UDO against Plaintiffs was unreasonable, arbitrary, capricious, and motivated by malice and/or a reckless disregard of the Plaintiffs' clearly establishes constitutional and statutory rights.

173.    The Town was aware that its agents were unlawfully enforcing the UDO and knew or should have known such actions deprived Plaintiffs' of their statutory and constitutional rights.

174.    Plaintiffs have suffered and continue to suffer actual damages as a result of the violations of their civil and constitutional rights by the Defendants, as described herein, and therefore are entitled to recover those damages pursuant to 42 U.S.C. § 1983.

### SEVENTH CLAIM FOR RELIEF

**Violation of 1st Amendment Right to Freedom of Speech, Association, and Protest**
**(42 U.S.C. § 1983)**
[Defendant Town, Defendants OWENS and WESSELL, individually]

175.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

176.    The 1st Amendment to the U.S. Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

177.    Defendants retaliated against Plaintiffs for exercising their constitutional rights to freedom of speech, association, and protest when Plaintiffs attempted to appeal citations for zoning violations, wrote letters, emails, and text messages to Town officials seeking a redress of grievances arising out of the Defendants' enforcement of the UDO, informed Town representatives about potential conflicts of interest, and associated for purposes of a commercial equipment leasing agreement.

178.    Plaintiffs have suffered and continue to suffer actual damages as a result of the violations of their civil and constitutional rights by the Defendants, as described herein, and therefore are entitled to recover those damages pursuant to 42 U.S.C. § 1983.

### EIGHTH CLAIM FOR RELIEF

**Violations of Clearly Established Constitutional and Statutory Rights**
**(42 U.S.C. § 1983 - Punitive Damages)**
[Defendants OWENS and WESSELL, individually]

179.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

180.    The Defendants acted under the color of authority under state law and/or under the color of authority under the UDO took property from MANGUM and WB-JSR by seeking collection of

unlawfully issued civil citations and improperly securing an injunction enjoining the lawful operation of his business.

181.   OWENS violated Plaintiffs' clearly established statutory or constitutional rights of which a reasonable person would have known.

182.   At all times relevant, OWENS was motivated by personal spite and a desire for revenge against MANGUM and anyone with whom he associated.

183.   WESSELL is an attorney licensed by the State of North Carolina with specialized knowledge of the Town's duty to adhere to the constitutional and statutory rights owed to the Plaintiffs, and thus knew or reasonably should have known that the Defendants' conduct violated the clearly established rights of the Plaintiffs as alleged herein.

184.   The wrongs committed by OWENS and WESSELL were done willfully or under the circumstances of rudeness, oppression, or in a manner which evidences a reckless and wanton disregard of the Plaintiffs' rights.

185.   Plaintiffs have suffered and continue to suffer actual damages as a result of the willful or reckless violations of their civil and constitutional rights by the Defendants OWENS and WESSELL, individually, as described herein, and therefore are entitled to recover punitive damages pursuant to 42 U.S.C. § 1983.

### NINTH CLAIM FOR RELIEF

**Violation of Right to Due Process/Deprivation of Liberty, Fruits of Labor**
**(N.C. Const. Art. I § 1)**
[Defendant Town, Defendants OWENS and WESSELL, individually]

186.   Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

187.   The Town and its agents acted under color of state law and in accordance with the official policies of the Town to deprive Plaintiffs of their rights, privileges, and immunities secured by Article I, § 1 of the North Carolina Constitution.

188.   Article I, § 1 of the North Carolina Constitution provides, "We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable

rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness."

189.    The deprivations of Plaintiffs' state constitutional rights alleged herein were directly and proximately caused by the individual acts and conduct of Defendants OWENS and WESSELL.

190.    Plaintiffs have suffered and continue to suffer actual damages as a result of the violations of their civil and constitutional rights by the Defendants, as described herein, and therefore are entitled to recover those damages pursuant to N.C. Const., Art. I, § 1.

## TENTH CLAIM FOR RELIEF
### Violation of Right to Due Process/Denial of the Law of the Land
### (N.C. Const. Art. I § 19)
[Defendant Town, Defendants OWENS and WESSELL, individually]

191.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

192.    The Town and its agents acted under color of state law and in accordance with the official policies of the Town to deprive Plaintiffs of their rights, privileges, and immunities secured by Article I, § 19 of the North Carolina Constitution.

193.    Article 1 § 19 of the North Carolina Constitution provides, "No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land.  No person shall be denied the equal protection of the laws…."

194.    Plaintiffs have suffered and continue to suffer actual damages as a result of the violations of their civil and constitutional rights by the Defendants, as described herein, and therefore are entitled to recover those damages pursuant to N.C. Const., Art. I, § 19.

## ELEVENTH CLAIM FOR RELIEF

### Violation of Right to Due Process/Denial of Equal Protection
### (N.C. Const. Art. I § 19)
[Defendant Town, Defendants OWENS and WESSELL, individually]

195.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

196.     The Town and its agents acted under color of state law and in accordance with the official policies of the Town to deprive Plaintiffs of their rights to equal protection of the law secured by Article I, § 19 of the North Carolina Constitution.

197.     Article 1 § 19 of the North Carolina Constitution provides, "No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land.  No person shall be denied the equal protection of the laws…."

198.     Plaintiffs have suffered and continue to suffer actual damages as a result of the violations of their civil and constitutional rights by the Defendants, as described herein, and therefore are entitled to recover those damages pursuant to N.C. Const., Art. I, § 19.

## TWELFTH CLAIM FOR RELIEF

### Violation of Right to Freedom of Speech/Retaliation
### (N.C. Const., Art. I § 14)
[Defendant Town, Defendants OWENS and WESSELL, individually]

199.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

200.     Article I, § 14 of the North Carolina Constitution provides, "Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse.

201.     Defendants retaliated against Plaintiffs for exercising their constitutional rights to freedom of speech, association, and protest when Plaintiffs attempted to appeal citations for zoning violations, wrote letters, emails, and text messages to Town officials seeking a redress of grievances

arising out of the Defendants' enforcement of the UDO, informed Town representatives about potential conflicts of interest, and associated for purposes of a commercial equipment leasing agreement.

202.     Plaintiffs have suffered and continue to suffer actual damages as a result of the violations of their civil and constitutional rights by the Defendants, as described herein, and therefore are entitled to recover those damages pursuant to N.C. Const., Art. I § 14.

## THIRTEENTH CLAIM FOR RELIEF

### Abuse of Process
### (N.C. Common Law)
[Defendant Town, Defendants OWENS and WESSELL, individually]

203.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

204.     Prior proceedings, including the issuance of civil citations to Plaintiffs, the collection of penalties from MANGUM under the Debt-Setoff Act, and the civil action for debt-collection and injunctive relief filed against MANGUM and WB-JSR, were initiated against Plaintiffs by the Defendants or used by Defendants to achieve an ulterior motive or purpose.

205.     Once proceedings were initiated, Defendants, by and through counsel and at the direction of OWENS, and with the advice and consent of WESSELL, committed willful acts not proper in the regular prosecution of the proceedings, such as, but not limited to the following:

     a.  After issuing citations against MANGUM, and thereafter seeking to collect the civil penalties through the Debt-Setoff Act, under which MANGUM properly exercised his right to request a hearing, the Town, instead of providing a hearing as required by law, filed a civil action against MANGUM and WB-JSR for recovery of the debt and injunctive relief;

     b.  Despite the requirement that the equitable remedies sought in the civil action against MANGUM and WB-JSR be achieved in accordance with Rule 65 of the N.C. Rules of Civil Procedure, the Town, after filing the civil action, sought and secured a Consent Judgment containing overly restrictive injunctive measures

enjoining MANGUM from operating his business without ever appearing before the Superior Court for a hearing to determine the merits of the action;

c. After the Town issued SEITTER citations for zoning violations, and after SEITTER timely gave notice of appeal of those citations, the Town did not respond, but instead filed a Motion to hold MANGUM in contempt of court;

d. After initiating the civil action against MANGUM and WB-JSR, and only after SEITTER gave notice of appeal of his citations, the Town filed a motion to hold MANGUM in contempt of court pursuant to the state civil contempt statutes, but then sought and secured remedies only available under the criminal contempt statutes, notwithstanding the absence of any valid factual or legal basis for such relief, and after calling MANGUM to testify against his own behalf in violation of his 5th Amendment right to be free from self-incrimination.

## FOURTEENTH CLAIM FOR RELIEF
### Civil Conspiracy
### (N.C. Common Law)
[Defendants OWENS and WESSELL, individually]

206. Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

207. At all times relevant, a conspiracy to deprive Plaintiffs of their constitutional and statutory rights existed between OWENS and WESSELL.

208. As alleged herein, OWENS and WESSELL committed wrongful acts in furtherance of the conspiracy.

209. Plaintiffs were injured as a direct and proximate result of that conspiracy.

## FIFTEENTH CLAIM FOR RELIEF
### Defamation
### (N.C. Common Law)
[Plaintiffs MANGUM and WB-JSR against Defendant OWENS, individually]

210. Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

211.     OWENS spoke or published base or defamatory words which tended to prejudice MANGUM in his occupation, trade, business, and/or means of livelihood or hold MANGUM and WB-JSR up to disgrace, ridicule, or contempt.

212.     The statements made by OWENS were false.

213.     OWENS' defamatory conduct was willful and done with malice in order to harm MANGUM and WB-JSR.

214.     OWENS intended to retaliate against MANGUM and WB-JSR for the previous complaints and grievances about the Defendants' conduct enforcing the UDO.

215.     The statements were published and communicated to and understood by third persons.

## SIXTEENTH CLAIM FOR RELIEF
### Unfair & Deceptive Trade Practices
**(N.C.G.S. § 75-1.1)**
[Defendant OWENS, individually]

216.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

217.     By engaging in the conduct alleged herein, OWENS committed unfair and/or deceptive acts or practices.

218.     The unfair and/or deceptive actions committed by OWENS affected commerce.

219.     The unfair/deceptive acts committed by OWENS exceeded the scope of his official duties as Town Manager of Wrightsville Beach.

220.     The unfair and deceptive acts committed by OWENS directly and proximately caused injury to the Plaintiffs.

## SEVENTEENTH CLAIM FOR RELIEF
### Attorney Fees
**(42 U.S.C. § 1988; N.C.G.S. § 6-19.1; G.S. § 6-21.7, G.S. § 75-16.1)**
[All Defendants]

221.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

222.     This is an action to enforce the provisions of 42 U.S.C. § 1983.  Accordingly, Plaintiffs are entitled to an award of their reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988.

223.     This action contests state action pursuant to state law.  Accordingly, Plaintiffs are entitled to an award of their reasonable costs and attorney's fees pursuant to N.C.G.S. § 6-19.1.

224.     Defendants abused their discretion by erroneously acting outside the scope of their authority in a manner so arbitrary that it could not have been the result of a reasoned decision. Accordingly, Plaintiffs are entitled to a mandatory award of costs and attorney's fees pursuant to N.C.G.S § 6-21.7.

225.     Alternatively, Defendants acted outside the scope of their legal authority by engaging in specific activities not delegated to it by the legislature, by failing to comply with statutory and constitutional requirements in exercising its authority, and by exercising its authority in an unlawful way.  Therefore, Plaintiffs are entitled to a discretionary award of costs and attorney's fees pursuant to N.C.G.S § 6-21.7.

### EIGHTEENTH CLAIM FOR RELIEF

**Preliminary & Permanent Injunction Enjoining Enforcement of UDO § 155.2.9(B), the UDO on Exempt State-Owned Lands, the Consent Judgment, & the Order of Contempt (42 U.S.C. § 1983; N.C.G.S. § 160A-4)**
[Defendant Town, Defendants OWENS and WESSELL in their official capacities]

226.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above and hereafter as though fully set forth herein.

227.     Plaintiffs had clearly established rights under North Carolina and federal law to be free from enforcement of ordinances enacted without statutory authority, from disparate treatment under the laws without a rational basis and in derogation of their fundamental rights, and from the enforcement of unlawful and discriminatory ordinances.

228.     The Town was aware of the Plaintiffs' clearly established rights, and those of persons similarly situated, when the Town enacted the "appeal fee" provision, issued citations for zoning violations in excess of its jurisdiction, and demanded **$500.00** non-refundable "appeal fees" from Plaintiffs and those similarly situated, and was aware that its actions violated those rights.

229.     Plaintiffs and those similarly situated have suffered and will continue to suffer pecuniary loss in the amount of the fees collected as a result of the Town's action.

230.     Based on the foregoing, Plaintiffs and those similarly situated are entitled to a preliminary and permanent injunction prohibiting Defendants from enforcing (1) the "appeal fee" set forth in UDO § 155.2.9(B), the UDO on exempted state-owned lands, the Consent Judgment, and the Contempt Order, and further Ordering Defendants to undertake an accounting and refund of all unlawfully collected "appeal fees" plus interest.

**PRAYER FOR RELIEF**

**WHEREFORE**, to redress the injuries proximately and directly caused by Defendants' conduct as stated in the Paragraphs above, and to prevent the substantial risk of irreparable injury to other persons in the Town of Wrightsville Beach as a result of the acts, policies, customs, practices, and supervisory misconduct alleged herein, Plaintiffs respectfully pray unto the Court:

1.     For preliminary and permanent injunctive relief that:

    a.     enjoins enforcement of the "Appeal Fee" provision set forth in UDO § 155.2.9(B);

    b.     enjoins enforcement of the UDO in excess of the Town's jurisdiction;

    c.     enjoins enforcement of the April 25, 2018 Consent Judgment;

    d.     enjoins enforcement of the September 10, 2018 Contempt Order;

2.     For entry of a judgment declaring the Town's "fee ordinance" and UDO enforcement against Plaintiffs unconstitutional, unlawful, and/or beyond the scope of its authority;

3.     For entry of an Order declaring VOID any penalties, citations, judgements, orders, remedies, and other relief unlawfully issued or wrongfully obtained by the Town, including, but not limited to, all civil citations issued against Plaintiffs along with the Consent Judgment and Order of Contempt entered against MANGUM and WB-JSR arising therefrom.

4.     That the Court issue an Order for an accounting and refund of all unlawfully collected fees plus interest;

5.     For judgment against Defendants in all claims;

6.      That Plaintiffs have and recover from Defendants their actual, compensatory, and nominal damages in an amount to be established at trial for the constitutional deprivations; past and future economic loss, emotional and mental distress, loss of privacy, loss of reputation; and expenses associated with defending against the proceedings initiated and sustained by Defendants' unlawful conduct;

7.      That Plaintiffs have and recover from individual Defendants OWENS and WESSELL their actual, compensatory, nominal, and punitive damages in an amount to be established at trial to punish Defendants for outrageous conduct pursued out of actual malice that recklessly and callously disregarded and was deliberately indifferent to Plaintiffs' constitutional rights, to discourage Defendants from engaging in similar conduct in the future, and to deter others similarly situated from engaging in similar conduct;

8.      That damages awarded in individual claims against OWENS be trebled pursuant to N.C.G.S. § 75-16;

9.      That all reasonable and customary costs, expenses, and interest incurred in pursuit of this action be taxed against Defendants;

10.      For an award of Plaintiffs' reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; N.C.G.S. §§ 6-19.1, 6-21.7, and/or 75-16.1;

11.      For a trial by jury on all issues so triable;

12.      For such other and further relief as this Court may deem just and proper.

Respectfully submitted this the 15th day of February 2019.

*/s/ Gregory A. Buscemi*
GREGORY A. BUSCEMI
N.C. State Bar No.: 52054
Attorney for Plaintiff
BUSCEMI LAW, PLLC
530 Causeway Dr., Ste. F-1
Wrightsville Beach, NC 28480
Tel.: (910) 477-3742
Fax: (910) 208-0373
Email: gbuscemi@wilmlaw.com
